UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MATTHEW P.,

          Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

22-CV-00550-MJR

DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

Plaintiff Matthew P.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 12) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for DIB and SSI on February 10, 2015, with an alleged onset date of February 1, 2014. (Administrative Transcript ["Tr."] 333-346). The claim was initially denied and was denied again following an administrative hearing before an administrative law judge ("ALJ"). The Appeals Council ("AC") denied review and Plaintiff appealed to this Court. The parties stipulated to remand on December 9, 2019.

On remand, the AC ordered a new hearing. On March 19, 2021, ALJ William M. Weir held a telephonic hearing, at which Plaintiff participated, with counsel. (Tr. 969-1005). A vocational expert also testified. On May 21, 2021, the ALJ issued an unfavorable decision. (Tr. 948-68). The ALJ then issued an amended decision on March 16, 2022. (Tr. 932-47). Plaintiff appealed that amended decision directly to this Court.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v.*

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

Preliminarily, the ALJ found Plaintiff's last-insured date to be December 31, 2016. (Tr. 939). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. (Tr. 939). At step two, the ALJ found that Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease; degenerative joint disease of the right arm; and asthma. (Tr. 939-40). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 940-41).

Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work, except:

> [Plaintiff] cannot reach above shoulder level with the dominant arm and hand, as well as the non-dominant arm and hand; cannot climbing [sic] of ladders, ropes or scaffolds; can occasional [sic] climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, or crawl; [Plaintiff] should avoid working around protected heights and dangerous machinery, tools, or chemicals; [Plaintiff] should not work in an environment with trip hazards including small items on the floor which are unavoidable or slippery or uneven surfaces; and [Plaintiff] should avoid working in

an environment with concentrated exposure to pulmonary irritants, fumes, and noxious gases.

(Tr. 941-45). At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a collections agent. (Tr. 945-46). In the alternative, at step five, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy. (Tr. 946-47). Thus, the ALJ concluded that Plaintiff is not disabled. (Tr. 947).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because the ALJ failed to apply correctly the treating physician rule. The Court disagrees.

Under the Social Security regulations applicable to this case, 20 C.F.R. §§ 404.1527 and 416.927, if an opinion from a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). When an ALJ does not assign a treating source opinion controlling weight, the ALJ weighs the opinion according to various factors, including supportability, consistency, treatment, examination, specialty, and other factors, such as familiarity with the record at large, or with the agency's programs. 20 C.F.R. §§ 404.1527(c); 416.927(c). The regulations require that an ALJ always provide "good reasons" for the weight afforded to treating physicians' opinions. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

The Second Circuit has stated that giving good reasons means "explicitly" applying any relevant factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c), when reviewing a treating physician's opinion, most notably the treatment factor. *Estrella v. Berryhill*, 925

F.3d 90, 95-96 (2d Cir. 2019). The Court added however, that it would affirm, despite such "procedural error," if "a searching review of the record" assures us "that the substance of the treating physician rule was not traversed." *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Here, Plaintiff's treating physician Dr. Benjamin Zwierzchowski, M.D., issued medical opinions on March 1, 2021, and March 23, 2021, which were much more restrictive than the ALJ's RFC determination. The ALJ gave good reasons for finding that Dr. Zwierzchowski's opinions were not controlling and, in fact, were entitled to very little weight (Tr. 945). Most notably, the ALJ correctly pointed out that the Dr. Zwierzchowski assessed limitations that were attributable to Covid-19, despite the fact that Plaintiff did not have persistent symptoms of the disease. (Tr. 945). Indeed, Dr. Zwierzchowski only saw Plaintiff once, for respiratory symptoms, while he was recovering from Covid-19 induced pneumonia. (Tr. 2993-98). The doctor performed a limited examination of Plaintiff's heart and lungs, and diagnosed: asthma, lab test positive for detection of Covid-19 virus, insomnia, and lung infiltrate. (Tr. 2996). Meanwhile, other contemporaneous UB Family Medicine notes, found at Exhibit 31F, do not indicate significant complaints of neck or back pain, or significant musculoskeletal abnormalities, which would provide an alternative explanation for the limitations found in his report. (Tr. 2971-3004). In his March 2021 opinions, Dr. Zwierzchowski explicitly cited "persistent dyspnea after Covid-19" as supporting his opinions. (Tr. 3239). This reliance on the Covid-19 diagnosis undermined Dr. Zwierzchowski's opinion since impairments not lasting 12 months cannot form the basis of a disability finding. *See* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last

for a continuous period of at least 12 months. We call this the duration requirement."). Critically, Plaintiff was diagnosed with Covid-19 in November 2020 (Tr. 2976), but there are no medical records indicating continuing Covid-19 symptoms after January 2021 (Tr. 2442, 2521, 2993-98).

Further, the ALJ pointed out that Plaintiff's treatment at UB Family Medicine, though more extensive than Dr. Zwierzchowski's single examination, was itself sporadic and limited in the period leading up to Dr. Zwierzchowski's March 2021 opinions. (Tr. 945). Indeed, Plaintiff visited just three times in 2019, and was on track to do the same in 2020, until he contracted Covid-19 in November 2020, and began frequent follow up for that condition. (Tr. 1742, 1746, 1750, 1758, 1761, 2999). After January 2021, he never returned. (Tr. 2933). Given this, the ALJ concluded that Dr. Zwierzchowski did not have the "longitudinal" picture that often recommends a treating physician's opinion. (Tr. 945); see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) …"). In fact, the Second Circuit has found that, in such circumstances, the treating physician rule does not even apply. See Monette v. Astrue, 269 Fed. Appx. 109, 112-1138 (2d Cir. 2008) ("[T]here simply was no ongoing physician-treatment relationship between the claimant and the doctor during the relevant period and the doctor was therefore not in a unique position to make a complete and accurate diagnosis."); accord Young v. Berryhill, 1:17-cv-00844, 2019 U.S. Dist. LEXIS 4870, *9 (W.D.N.Y. Jan. 10, 2019).

Moreover, the ALJ pointed out that Dr. Zwierzchowski's two opinions, though offered just weeks apart, were different, with no explanation for the changes. (Tr. 945). For instance, the doctor first indicated that Plaintiff needed to shift positions at will; then a few weeks later, he advised that Plaintiff did not need to do so. (Tr. 3241, 3248). He first indicated Plaintiff could sit more than two hours at a time; then he indicated he could only do so for 20 minutes at a time. (Tr. 3240, 3247). He first indicated that Plaintiff could rarely lift less than ten pounds; then he could rarely lift up to 20. (Tr. 3241, 3248). Also, the March 1st report was itself internally inconsistent, inasmuch as the doctor assessed that Plaintiff could sit for *more than* two hours at a time, but for *less than* two hours total in a day. (Tr. 3240-41). The doctor also assessed that Plaintiff would *not* need to walk around during the workday but would need to do so for two minutes every ten minutes. (Tr. 3240). In *Micheli v. Astrue*, the Second Circuit held that internal inconsistencies within a treating physician's report were a basis to deny his opinions great weight. *See Micheli v. Astrue*, 501 Fed. Appx. 26, 29 (2d Cir. Oct. 25, 2012); *see Downs v. Colvin*, No. 6:15-cv-06644, 2016 U.S. Dist. LEXIS 131290, *10 (citing *id*) ("Moreover, this aspect of the opinion reveals an internal inconsistency, which is a factor the ALJ was entitled to consider.").

Finally, the ALJ cited the contrary opinion of consultative examiner Dr. Donna Miller, which was, itself, consistent with record evidence, and was not tied to temporary Covid-19 symptoms. (Tr. 944). As to consistency, the ALJ pointed out that Dr. Miller's opinions were consistent with the record as a whole, including records from Plaintiff's neurologists at Exhibits 4F and 22F, which were essentially normal, except for abnormal gait and/or use of an assistive device. (Tr. 944, *see* Tr. 485-86, 488-89, 498-99, 1773,

1776, 1779, 1783, 1797-98). Likewise, as to supportability, the ALJ pointed out that Dr. Miller's opinions were corroborated by her own findings. (Tr. 944, citing Tr. 523-25). On examination, Dr. Miller observed that Plaintiff's gait was hesitant, but he had a normal stance, used no assistive device, and walked on heels and toes without difficulty. (Tr. 523). He was able to change for the examination, get on and off the examination table, and rise from his chair without difficulty. (Tr. 523). His breathing was normal. (Tr. 524). He had reduced range of cervical, lumbar, right shoulder, and knee motion, but full range of motion to the elbows, forearms, wrists, hips, and ankles. (Tr. 524). Straight leg raise test was negative. (Tr. 524). Joints were stable and nontender, with no redness, heat, swelling, or effusion, and no evident subluxations, contractures, ankylosis, or thickening. (Tr. 524). Extremities had full strength, no atrophy or edema, physiologic and equal deep tendon reflexes, and no sensory deficits. (Tr. 524-25). It is well established that a well-supported consultative examiner's opinion can constitute the contrary substantial evidence necessary to reject a treating physician's opinion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence and the report of a consultative physician may constitute such evidence."); *accord James D. v. Comm'r of Soc. Sec.*, 547 F. Supp. 3d 279, 288 (W.D.N.Y. 2021).

In conclusion, under the substantial evidence standard of review, "it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Brault*, 683 F.3d at 448. Here, as explained above, there was substantial

evidence contradicting Dr. Zwierzchowski's medical opinions, including but not limited to: (1) Dr. Miller's opinion; and (2) Dr. Zwierzchowski's own inconsistent opinions. *See Mongeur*, 722 F.2d at 1039; *Micheli*, 501 Fed. Appx. at 29. Thus, the ALJ must be affirmed.

## **CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   November 15, 2024
        Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge